IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**STEPHEN UPTON,**

      **Plaintiff,**

v.                                                                Case No. 3:19-cv-00831

**WALMART, INC.,**

      **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court are Plaintiff's Motion to Remand, (ECF No. 4), and Motion to Amend Complaint, Motion to Compel Discovery, and Motion for Sanctions, (ECF No. 14). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order is referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

For the reasons that follow, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** the Motion to Remand, (ECF No. 4), and **DENY** the Motion to Amend Complaint, Motion to Compel Discovery, and Motion for Sanctions, (ECF No. 14).

**I.     Relevant Facts and Procedural History**

In September 2019, Plaintiff filed a *pro se* complaint in the Circuit Court of Putnam County, West Virginia. (ECF No. 1-1). Plaintiff alleged that he purchased a

1

$1,000.00 gift card from Defendant, Walmart, Inc., which he used to make an online purchase on Walmart.com. Plaintiff saved the gift card in his Walmart.com account to use at a later date. (*Id.* at 6). However, according to Plaintiff, when he attempted to make another purchase with the gift card, he discovered that a third party had illegally accessed and altered his account, and the remaining gift card balance of $878.94 was used at a Walmart store in Kennewick, Washington without his permission. (*Id.* at 6-7). Plaintiff alleged that Defendant agreed to reimburse him for the stolen gift card, but never did so. (*Id.* at 7). Accordingly, Plaintiff filed a lawsuit, asserting that Defendant failed to safeguard his personal information and enabled the theft, and, therefore, was liable for negligence, negligence per se for violating Section 5 of the Federal Trade Commission Act, breach of confidence, and violations of the West Virginia Consumer Credit and Protection Act ("WVCCPA"). (*Id.* at 7-12). Plaintiff sought compensatory and consequential damages, statutory damages and penalties allowed by law, restitution and disgorgement, punitive damages, pre-judgment and post-judgment interest, and reasonable fees and costs. (*Id.* at 13). The complaint did not include an *ad damnum* clause, seeking a specific recovery.

In November 2019, Defendant removed the action to this Court under 28 U.S.C. § 1332(a), alleging that federal jurisdiction exists due to diversity of citizenship and an amount in controversy exceeding $75,000.00. (ECF No. 1). Defendant stated that the case became removable when Plaintiff submitted a settlement demand in excess of $75,000.00. (ECF No. 6 at 3 n.3). Thereafter, Plaintiff filed a Motion to Remand, asserting that Defendant did not proffer any evidence that the amount in controversy actually exceeds $75,000.00. Plaintiff noted that he sued Defendant for $878.94, and that any further amount would be determined by a jury. (ECF No. 4). Plaintiff did not

dispute that complete diversity of citizenship existed; however, he contended that the amount in controversy clearly did not meet the jurisdictional requirement. (*Id.*).

Defendant filed a response to Plaintiff's Motion to Remand, relying on case law from this district, which held that a settlement "demand in excess of the jurisdictional minimum should be treated as the amount in controversy, unless the plaintiff shows to a legal certainty he cannot recover over $75,000." (ECF No. 6 at 2) (quoting *Scaralto v. Ferrell*, 826 F. Supp. 2d 960, 968–69 (S.D.W. Va. 2011)). In reply, Plaintiff argued that his settlement demand was a "bald unsupported" starting point to evaluate whether Defendant was serious about settling the case given that Defendant previously extended to Plaintiff a "bad faith settlement offer below [his] losses." (ECF No. 7 at 1). Plaintiff asserted that Defendant inappropriately used his settlement demand as a basis to remove the case to federal court in an effort to oppress and burden Plaintiff rather than work toward any meaningful solution. (*Id.*). Plaintiff concluded his Reply by stating that he "hereby enters a demand of damages in the amount of $75,000.00." (*Id.* at 2).

After considering the issues and relevant law, the Court granted the parties 60 days to conduct limited jurisdictional discovery. (ECF No. 12). Defendant deposed Plaintiff after which Plaintiff filed a motion to amend his complaint to add an abuse of process claim. (ECF No. 14). Plaintiff alleged that his "deposition was conducted with malice and excessive bad faith" with the intent to harass him. (*Id.* at 1). In Plaintiff's view, the four hour deposition "had nothing to do with the case or surrounding facts" and improperly focused on his personal and professional life. (*Id.*). Plaintiff also moved for an order compelling Defendant to respond to his discovery requests, stating that Defendant objected to all of his interrogatories and requests for production of

3

documents and also withheld evidence. (*Id.* at 2). In addition, Plaintiff moved for sanctions against Defendant on the basis that Defendant supposedly harassed Plaintiff through his deposition; removed the case to federal court, knowing that it did not meet the jurisdictional requirement; and did not participate in discovery in good faith. (*Id.*).

In response to the foregoing motion, Defendant contended that Plaintiff's motion to compel discovery was not filed within 30 days after Defendant submitted its discovery responses. Thus, Defendant asserted that Plaintiff's objections to the discovery responses were waived pursuant to Local Rule 37.1. (ECF No. 21 at 2). Furthermore, Defendant argued that it responded appropriately to Plaintiff's discovery requests, and at no time during the parties' meet and confer discussions did Plaintiff raise the issue of his pending motion for sanctions. (*Id.* at 11).

Prior to addressing the pending motions, the undersigned ordered the parties to mediate their differences, which was accomplished on May 21, 2020. (ECF Nos. 25, 29). Unfortunately, the parties were unable to resolve their very simple and straightforward disagreement, which appears particularly amenable to compromise. (ECF No. 28).

## II.   Discussion

### A.   *Motion to Remand*

District courts have original jurisdiction in actions involving citizens of different states when the amount in controversy exceeds $75,000.00, exclusive of interests and costs. 28 U.S.C. § 1332(a). This action was originally filed in state court, and Defendant removed it under § 1332(a). (ECF No. 1). The parties do not dispute that diversity of citizenship exists, but they disagree whether the amount in controversy meets the jurisdictional minimum. (ECF Nos. 4, 6, 7).

"The key inquiry in determining whether the amount-in-controversy requirement is met is not what the plaintiff will actually recover but an estimate of the amount that will be put at issue in the course of the litigation." *Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 196 (4th Cir. 2017) (citation and markings omitted); *Scaralto*, 826 F.Supp.2d at 968 ("Properly analyzed, a court is not to use this information to estimate the amount a jury would award the plaintiff assuming he prevails, but rather to estimate what a reasonable plaintiff would demand or claim. If the court thinks that a reasonable plaintiff would claim more than $75,000, then the defendant has met its burden of proof.") (footnote and citation omitted). Two different tests apply to evaluate the amount in controversy based on whether the suit is filed in state or federal court. If the plaintiff files the action in federal court under § 1332(a), and the requisite diversity of citizenship exists, the district court has jurisdiction "unless it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *Landmark Corp. v. Apogee Coal Co.*, 945 F. Supp. 932, 935 (S.D.W. Va. 1996) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289 (1938)) (internal markings and citations omitted). However, the foregoing "legal certainty" test only applies in instances in which the plaintiff invokes federal jurisdiction by filing the case in federal court. *Id.* When the plaintiff instead files the action in state court, "[t]here is a strong presumption that the plaintiff has not claimed a large amount in order to confer jurisdiction on a federal court or that the parties have colluded to that end." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. at 290–91.

Thus, in a removal case, the burden is on the removing defendant to prove by a preponderance of the evidence that the value of the matter in controversy exceeds the

5

jurisdictional amount. *Landmark Corp.*, 945 F. Supp. at 935; *see also Mulcahey v. Columbia Organic Chemicals Co.*, 29 F.3d 148, 151 (4th Cir. 1994) ("The burden of establishing federal jurisdiction is placed upon the party seeking removal.") (citing *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92 (1921)). Stated differently, the removing defendant must show "that it is more likely than not that the amount in controversy exceeds the jurisdictional amount." *Landmark Corp.,* 945 F. Supp. at 935. Here, the parties agree that the second test applies, and the burden is on Defendant to prove by a preponderance of the evidence that this Court has jurisdiction over this case. (ECF Nos. 4 at 2, 6 at 1).

Turning to the matter at hand, courts have generally found that when the *ad damnum* clause of the complaint seeks more than $75,000, the amount in controversy requirement has been met. However, "[w]hen the amount in controversy is not apparent on the face of a complaint, the Court may consider several factors and make an independent evaluation of whether the amount in controversy has been satisfied." *Stogsdill v. Spears*, No. 2:19-CV-00440, 2019 WL 4230665, at *2 (S.D.W. Va. Sept. 5, 2019). Such factors include the complaint, the type and extent of the plaintiff's injuries, the amounts awarded in similar cases, losses incurred to the date of removal, and a claim for punitive damages. *Id.* (quoting *Scaralto*, 826 F. Supp. 2d at 968); *McCoy v. Erie Ins. Co.*, 147 F.Supp.2d 481, 489 (S.D. W. Va. 2001). The Court may also consider as a factor a plaintiff's settlement demand made prior to removal. *Id.* However, the weight to be given to settlement demands is a matter of dispute among courts. *McCloud v. Followay*, No. CV 3:19-CV-00311, 2019 WL 5268681, at *1 (S.D.W. Va. Oct. 17, 2019) (citing *McCoy*, 147 F.Supp.2d at 489). "If the court thinks that a reasonable plaintiff would claim more than $75,000, then the defendant has met its burden of proof."

6

*Scaralto*, 826 F. Supp. 2d at 968.

In *Scaralto*, the case relied upon by Defendant in support of removal, the Court considered a Motion to Remand in a case filed by a plaintiff who alleged that he was seriously injured in a motor vehicle accident. Pursuant to West Virginia law governing personal injury cases, the complaint did not contain an *ad damnum* clause; however, the plaintiff demanded $150,000.00 from the defendant prior to removal. *Scaralto*, 826 F. Supp. 2d at 961. The Court concluded that "a demand in excess of the jurisdictional minimum should be treated as the amount in controversy, unless the plaintiff shows that to a legal certainty he cannot recover over $75,000." *Id*. at 968–69. The Court reasoned that this approach enhanced "the predictability and efficiency of jurisdictional decisions." *Id*. The Court applied that rule in a subsequent case, stating that "[w]hen a plaintiff demands a sum certain—whether by complaint, stipulation, settlement demand, or the like—the court rarely needs to look any further to determine the amount in controversy." *Ellison v. Credit Acceptance Corp.*, 177 F. Supp. 3d 967, 971 (S.D.W. Va. 2016).

Nevertheless, in considering whether the amount in controversy is met, "[a] single, simple principle provides the foundation for jurisdictional inquiries: 'Federal courts are courts of limited jurisdiction.'" *Bennett v. Keystone Cremation All., LLC*, No. 2:18-CV-01280, 2018 WL 4956125, at *1–2 (S.D.W. Va. Oct. 11, 2018) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Thus, federal courts have "rigorously enforced" the amount in controversy requirement consistent with "[t]he intent of Congress drastically to restrict federal jurisdiction in controversies between citizens of different states." *Id.* (quoting *St. Paul Mercury Indem. Co.*, 303 U.S. at 288). While federal courts avoid "protracted litigation over complex

7

jurisdictional rules," removal statutes must be construed strictly against removal, and, if federal jurisdiction is doubtful, a remand is necessary. *Id.*; *see also Chatterton v. CUNA Mut. Ins. Soc'y*, No. CV 3:07-0167, 2007 WL 9718111, at *2 (S.D.W. Va. May 29, 2007) (citations omitted).

Defendant argues in response to Plaintiff's Motion to Remand that it has set forth a good faith basis for establishing the amount in controversy due to the damages pled in Plaintiff's Complaint. (ECF No. 6 at 3). However, Defendant very clearly stated that the action only became removable when Plaintiff made a settlement demand on November 14, 2019 in excess of the jurisdictional minimum. (*Id.* at n.3). Therefore, it appears by Defendant's own admission that this Court's jurisdiction is based entirely on Plaintiff's pre-removal settlement demand, and not the damages alleged in Plaintiff's Complaint.

While Defendant's argument is reasonable given the *Scaralto* decision, this Court has repeatedly stated that it "is not required to leave its common sense behind" when determining whether the amount in controversy meets the jurisdictional minimum. *Parsley v. Norfolk & W. Ry. Co.*, No. 3:17-CV-04322, 2018 WL 813158, at *1 (S.D.W. Va. Feb. 9, 2018) (stating that to determine the amount in controversy, "the Court should use common sense to consider what the plaintiff would recover if he prevailed on the merits of his case.") (citing *McCoy*, 147 F.Supp.2d at 489); *also Osburn v. Precision Cast Corp.*, No. CV 3:17-4236, 2017 WL 5908001, at *1 (S.D.W. Va. Nov. 30, 2017); *Chandler v. Ultimate Health Servs., Inc.*, No. CIV.A. 3:14-27340, 2015 WL 521235, at *2 (S.D.W. Va. Feb. 9, 2015); *Sullivan v. Doe*, No. 3:11-CV-00923, 2012 WL 215857, at *2 (S.D.W. Va. Jan. 24, 2012) (quoting *Mullins v. Harry's Mobile Homes, Inc.*, 861 F. Supp. 22, 24 (S.D. W. Va. 1994)). When, as here, the amount in

8

controversy is not apparent on the face of the complaint, and the plaintiff has disavowed the validity of his own settlement demand, admitting that it was intended solely as a counter to Defendant's "bad faith" and "oppressive" offer, (ECF No. 7 at 1), the Court may consider factors other than the abandoned settlement demand.

This common sense approach has been applied consistently. For example, the Court recently considered a case in which plaintiffs filed a class action complaint in the Circuit Court of Putnam County, West Virginia, alleging violations of several state consumer protection laws and common law torts. *Davis v. Collecto, Inc.*, No. CV 3:20-0215, 2020 WL 2099563, at *1 (S.D.W. Va. May 1, 2020). The basis of their claims was that the defendant illegally attempted to collect an unpaid debt owed to DISH Network over a period of months. *Id*. The defendant removed the action, and the plaintiff moved to remand it. In reviewing the Motion to Remand, the Court explained that it was not convinced that the defendant had established that it was more likely than not that the plaintiffs' individual claims could result in damages exceeding $75,000.00. The Court noted that the entire action was premised on the defendant's alleged effort to collect a $360.40 debt, and the defendant had not produced any evidence or argument tending to demonstrate that the actual, statutory, general, or punitive damages that the plaintiffs demanded would likely exceed $75,000.00. *Id*. at *2. The Court further stated that the very fact that the plaintiffs filed the Motion for Remand evidenced a belief that their individual claims were not worth more than $75,000.00. *Id*.

In this case, Plaintiff alleges that a third party accessed his account on Defendant's website and stole the balance of a $878.94 gift card. (ECF No. 1-1). His causes of action against Defendant include: (1) negligence, stating that Defendant breached its duty to exercise reasonable care in safeguarding Plaintiff's personal

9

information, which resulted in the theft; (2) negligence per se on the basis that Defendant violated Section 5 of the Federal Trade Commission Act by failing to use reasonable measures to protect personal and financial information; (3) breach of confidence due to Defendant's failure to prevent, detect, and/or avoid the data breach, which resulted in the disclosure and misappropriation of Plaintiff's personal information without his permission; and, finally, (4) violation of Sections 46A-6-102(7)(G) and (M) of the WVCCPA. (*Id.*). Plaintiff seeks compensatory and consequential damages, statutory damages and penalties allowed by law, restitution and disgorgement, punitive damages, pre-judgment and post-judgment interest, and reasonable fees and costs. (*Id.* at 13).

As stated, Plaintiff's Complaint does not include an *ad damnum* clause. Furthermore, the parties have not provided any precise figures regarding the damages available in this action other than to state that the stolen gift card was worth $878.94. Reviewing the claimed damages, Plaintiff asserts that Defendant violated two sections of the WVCCPA, which could allow him to recover actual damages and a statutory penalty of $1,000.00 per violation. *Waddell v. Capital Accounts, LLC*, No. 2:19-CV-00122, 2019 WL 5792865, at *5 (S.D.W. Va. Nov. 5, 2019) (citing W. Va. Code § 46A-5-101(1)). Plaintiff also seeks punitive damages. "Under West Virginia law, punitive damages are recoverable in tort actions, 'where gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others appear.'" *Bryant v. Wal-Mart Stores E., Inc.*, 117 F. Supp. 2d 555, 557 (S.D.W. Va. 2000) (quoting *Smith v. Perry,* syl. pt. 1, 359 S.E.2d 624, 625 (1987)). "A good faith claim for punitive damages may augment compensatory damages in determining the amount in controversy unless it can be said to a legal

certainty that plaintiff cannot recover punitive damages in the action." *Miller v. John Q. Hammons Hotels, L.P.*, No. CV 2:04-00918, 2005 WL 8159362, at *2 (S.D.W. Va. Apr. 8, 2005) (quoting *White v. J.C. Penney Life Ins. Co.*, 861 F. Supp. 25, 27 (S.D.W. Va. 1994)). Although it is rather dubious whether punitive damages would be awarded in this action, the undersigned cannot conclude to a legal certainty that they are not recoverable based on Plaintiff's Complaint. *Stoler v. PennyMac Loan Servs., LLC*, No. 2:18-CV-00988, 2018 WL 6422469, at *4 (S.D.W. Va. Dec. 6, 2018) (stating that punitive damages were potentially available if the plaintiff recovered on her negligence claims).

In analyzing the potential impact of punitive damages in the jurisdictional amount, the Court has applied single-digit ratios of compensatory to punitive damages based on the precedent established in *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003). *Stoler*, 2018 WL 6422469, at *4; *Miller*, 2005 WL 8159362, at *3). The Court has found "the ratio of 2.5 to 1 to be a reasonable, conservative estimate." *Stoler*, 2018 WL 6422469, at *4. The WVCCPA penalties are not included in the punitive damages calculation as they are themselves punitive. *Id*. "Attorney's fees and costs awarded pursuant to the WVCCPA are considered compensatory damages and 'shall be included in the compensatory to punitive damages ratio in cases where punitive damages are available.'" *Id*. Plaintiff, who is proceeding *pro se*, does not have attorney's fees. The cost to file a civil action in a West Virginia Circuit Court is $200.00, W.V. Code § 59-1-11. Therefore, adding together Plaintiff's actual loss of the $878.94 gift card and the $200.00 court filing fee, and applying a 2.1 ratio to that figure, Plaintiff would arguably be entitled to punitive damages of around $2,300.00. In terms of his anxiety and emotional distress, the

parties have not provided any information regarding the viability of these claims, or of jury awards in cases similar to this one. Regardless, the combined loss of the gift card, filing fee, statutory penalties and any potential punitive damages—even assuming punitive damages were calculated at 10 times the demonstrated loss—do not come close to approaching the $75,000.00 amount necessary to trigger this Court's jurisdiction.

Therefore, based upon the record before the Court, the undersigned **FINDS** that Defendant fails to show by a preponderance of the evidence that the amount in controversy exceeds $75,000.00. Therefore, the undersigned **RECOMMENDS** that Plaintiff's Motion to Remand be **GRANTED**.

### B. Motion to Amend, Compel Discovery, and Award Sanctions

Plaintiff moves to amend his complaint to add an abuse of process claim on the basis that Defendant's counsel harassed him in his deposition by inquiring about his personal and professional life. He also moves to compel Defendant to fully respond to his discovery requests. Further, Plaintiff seeks an order awarding him sanctions because the Defendant allegedly harassed Plaintiff through his deposition; removed the case to federal court, knowing that it did not meet the jurisdictional requirements; and did not participate in discovery in good faith.

Given that the undersigned recommends Plaintiff's Motion to Remand be granted, and this matter be returned to state court, the undersigned **RECOMMENDS** that Plaintiff's motion to amend and motion to compel discovery be **DENIED** as **moot** in this Court. If Plaintiff's action is remanded to state court, that court should have the opportunity to address these motions, as they may affect the court's docket.

As for Plaintiff's motion for sanctions, the Court has the authority to issue

sanctions under Rules 11 and 37 of the Federal Rules of Civil Procedure. However, Plaintiff does not offer any basis for sanctions under the foregoing Rules, or any other apparent grounds. Defendant has not violated a discovery order. Moreover, for the reasons discussed above, Defendant's removal of this action was not without basis. Therefore, the undersigned **RECOMMENDS** that the presiding District Judge **DENY** Plaintiff's motion for sanctions.

### III.     Proposal and Recommendations

For the reasons set forth above, the undersigned **RECOMMENDS** the presiding District Judge **GRANT** the Motion to Remand, (ECF No. 4), and **DENY** the Motion to Amend Complaint, Motion to Compel Discovery, and Motion for Sanctions, (ECF No. 14).

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*,

474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff and counsel of record.

**FILED:** June 2, 2020

_____
Cheryl A. Eifert
United States Magistrate Judge